**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
MARK WAGENHOFFER,            :
                            :  Civil Action No. 07-3810(RBK)
              Plaintiff,     :
                            :
                            :
              v.             :    OPINION
                            :
KATHY IRELAND, et al.,       :
                            :
              Defendants.    :
```

**APPEARANCES:**

> MARK WAGENHOFFER, Plaintiff pro se
> #546004/254515B
> Talbot Hall
> 100-140 Lincoln Highway
> Kearny, New Jersey 07032

**KUGLER**, District Judge

Plaintiff Mark Wagenhoffer ("Wagenhoffer"), currently confined at a halfway house, Talbot Hall, in Kearny, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part, and that plaintiff's motion for a preliminary injunction be denied.[1]

## I.  BACKGROUND

_____Wagenhoffer brings his civil rights action against 29 named defendants.  He alleges that these defendants have violated his First Amendment rights to petition the courts and have access to the law library.  Wagenhoffer also claims that defendants have interfered with his incoming legal mail and have retaliated against plaintiff for asserting his constitutional rights.  Wagenhoffer further alleges that defendants denied him procedural due process with regard to a prison disciplinary hearing, in violation of the Fourteenth Amendment.

Wagenhoffer names numerous defendants as follows: Thomas P. Sullivan, Administrator at Bayside State Prison ("BSP"); Sgt. Eric Davenport, BSP Ancora Unit; Lt. Phrampus, BSP Ancora Unit; Sgt. Maldonado, BSP Ancora Unit; Correctional Officer ("CO") Gaudious, BSP Ancora Unit; CO Lamagi, BSP Ancora Unit; CO S. Gonzales, BSP Ancora Unit; CO Newman, BSP Ancora Unit; Dennis

---

[1]  Wagenhoffer filed a motion for a preliminary injunction, on or about October 15, 2007, with respect to his denial of procedural due process claim.

2

Tamagni, Supervisor of Education at BSP; Kathy Ireland, Disciplinary Hearing Officer ("DHO"); Andrea Kinchen, Ass't. Superintendent at BSP; Lisa A. Puglisi, Deputy Attorney General ("DAG"); Sgt. Messier at Southern State Correctional Facility ("SSCF"); George Robinson, Administrator at SSCF; Ms. Gruccio, Supervisor of Education at SSCF; Mr. Bartkowski, Ass't. Superintendent at SSCF; John Doe, Chairman of Classification at SSCF; Sgt. M.E. Chard at South Woods State Prison ("SWSP"); Sgt. Augustin at SWSP; Captain Raffine at SWSP; Mr. Jallo, Ass't. Superintendent at SWSP; CO Gibson at SWSP; Kathryn MacFarland, Administrator at SWSP; Adm. Assistant Balicki at SWSP; Sgt. Booth at Mid-State Correctional Facility ("MSCF"); CO John Doe at MSCF; Jane Doe, Supervisor of Classification at MSCF; Clay R. Hughes, Ass't. Superintendent at MSCF; and George Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC").  The following factual allegations by plaintiff are taken from the Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Wagenhoffer first alleges that, on August 2, 2006, DHO Ireland took 60 days good-time credits from plaintiff without affording him the minimum due process guaranteed by the U.S. Constitution.  Plaintiff alleges that Ireland altered some of the institutional disciplinary record and conspired with the DAG

Puglisi to submit false and misleading documents to the Superior Court of New Jersey.  On December 6, 2006, DAG Puglisi submitted these false and misleading documents to the Superior Court of New Jersey.  (Complaint, "Statement of Claim" at ¶¶ 1-2).

On August 14, 2006, the Chairman of Classification at SSCF deprived Wagenhoffer of minimum custody credits and reclassified plaintiff's custody status from gang minimum to medium security classification.  Wagenhoffer complains that this administrative decision violated state law, namely, N.J.A.C. 10A:9-2.5.  (Compl., Statement of Claims at ¶ 3).  He also alleges that defendant Andrea Kinchen violated his right to due process by failing to follow state law, namely N.J.A.C. 10A:4 (appeals) with respect to his administrative appeal of his disciplinary hearings.  (<u>Id</u>. at ¶ 11).

Wagenhoffer next alleges that defendant Tamagni, the Supervisor of Education at BSP, violated plaintiff's First Amendment right to access to the courts by failing to provide access to the law library for those inmates housed at the Bayside Ancora Unit.  Wagenhoffer generally asserts that he was unable to file "effective" papers in the Superior Court of New Jersey.  (<u>Id</u>. at ¶ 4).

At various times between June 6, 2006 and July 19, 2006, defendants, Sgt. Davenport, CO Gaudious, Tamagni, CO S. Gonzales, CO Newman, Lt. Phrampus, and Sgt. Maldonado, allegedly violated

plaintiff's First Amendment right to file grievances without retaliation by harassing plaintiff and/or conspiring with others to harass or physically assault plaintiff, and/or filing disciplinary charges against plaintiff, for filing administrative grievances.  Wagenhoffer also alleges that he informed defendants Hayman and Sullivan of these purported violations by BSP officials, but the defendants failed to take any action to stop the harassment and retaliatory actions.  (Id. at ¶¶ 5-10, 12-14).

Wagenhoffer next contends that he was denied access to the courts from July 21, 2006 to September 13, 2006, while housed at SSCF, because defendants, Sgt. Messier, Ms. Gruccio, and Mr. Bartkowski, failed to ensure that plaintiff had access to inmate paralegals or to a law library.  Wagenhoffer states that he was unable to timely file papers in the Superior Court of New Jersey. Furthermore, when plaintiff was transferred to another facility that afforded him access to a law library, he filed motion papers with the court as within time, but the court denied the motion. (Id. at ¶¶ 15-17).

Plaintiff also alleges that the Supervisor of the mailroom at SSCF (John Doe) "consistently opened his legal mail" in retaliation for filing grievances and civil litigation against the NJDOC.  (Id. at ¶ 18).  Wagenhoffer further complains that defendant Robinson, Administrator at SSCF, was made aware of this harassment and the denial of access to the courts from August 24,

5

2006 to September 15, 2006, and did nothing to remedy the alleged violations.  (Id. at ¶ 19).

While confined at SWSP, Wagenhoffer contends that defendants, Sgt. Augustin, Sgt. M.E. Chard, Captain Raffine, Ass't. Superintendent Jallo and CO Gibson, denied plaintiff access to the courts, from October 27, 2006 to December 22, 2006, because he did not receive assistance from a person trained in law.  This resulted in plaintiff being unable to timely file papers in court.  After Wagenhoffer complained of this lack of access to the courts, the defendants threatened him with physical violence, denied plaintiff the opportunity to practice his religion and denied him any reading material.  In addition, defendant CO Gibson altered plaintiff's food by spitting, crushing and putting unknown substances in plaintiff's food tray in retaliation for plaintiff having filed administrative grievances.  (Id. at ¶¶ 20-24).

Wagenhoffer also alleges that while he was confined at SWSP, from September 15, 2006 to December 22, 2006, SWSP Administrator Kathryn MacFarland and Assistant Administrator Balicki failed to safeguard his constitutional rights to access to the courts, to practice his religion, and to be free from cruel and unusual punishment.  (Id. at ¶¶ 25, 26).

Finally, Wagenhoffer asserts allegations against prison officials at MSCF.  In particular, Wagenhoffer alleges that from December 22, 2006 to July 2, 2007, Sgt. Booth and a John Doe mail

6

room officer consistently opened his incoming legal mail and forwarded it to the classification committee.  The supervisor of the classification committee then photocopied plaintiff's legal mail and entered it in plaintiff's classification file.  (Id. at ¶¶ 27-29).

Wagenhoffer seeks compensatory and punitive damages in excess of $1.5 million for these alleged violations by defendants.  He also seeks injunctive relief directing that the NJDOC immediately correct his August 14, 2006 reclassification score to comply with N.J.A.C. 10A:9 and grant him all minimum custody credits allowed under N.J.S.A. 30:4-92.  Finally, Wagenhoffer asks that his 60 days good time credits be restored until he is provided a disciplinary hearing in which plaintiff is afforded his due process rights.  (Compl., "Relief").

On or about October 15, 2007, Wagenhoffer submitted a motion for preliminary injunctive relief with respect to his claim that his classification or custody status was increased from gang minimum to medium security.[2]  Plaintiff further contends that his disciplinary hearing resulted in the loss of 60 days good time credits, which should be restored until he is provided a disciplinary hearing affording him his due process rights. Wagenhoffer alleges that his incarceration beyond October 17,

---

[2]  Wagenhoffer also filed a request for appointment of counsel on September 13, 2007.  This application will be denied at this time, without prejudice to plaintiff reasserting his request after this Opinion and accompanying Order are filed.

2007 is unlawful because his good time credits should have been restored.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.   ANALYSIS

### A.   Denial of Access to the Courts

Wagenhoffer claims that defendants Tamagni, Sgt. Messier, Ms. Gruccio, Mr. Bartkowski, Sgt. Augustin, Sgt. M.E. Chard, Captain Raffine, CO Gibson, and Ass't. Superintendent Jallo, denied plaintiff access to the courts by failing to provide access to a law library or to inmate paralegals or other persons trained in law.

10

Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[3] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* Bounds, 430 U.S. at 823)(internal quotation omitted).

---

[3]  The right of access to the courts is an aspect of the First Amendment right to petition.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ...  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial."  Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis, 518 U.S. 343.

Here, Wagenhoffer expressly states that he was denied access to the law library or a person trained in law, and that this

13

denial of access to the courts resulted in the denial of a motion
he was unable to file within time.  He also complains that he was
unable to file "effective" papers in state court. These general
allegations at this early pleading stage, if true, may tend to
show actual injury, which is required in a denial of access
claim.  While it does not appear that Wagenhoffer was precluded
or prevented from filing lawsuits on his own, as this Complaint
demonstrates plaintiff's ability and access to do so, it does
appear that Wagenhoffer may be able to show that he suffered
actual injury from the denial of a motion in a pending case.
Therefore, at this preliminary screening stage, this Court will
allow plaintiff's denial of access to the courts claim proceed at
this time.

B.  <u>Retaliation</u>

        Wagenhoffer also alleges that he has been harassed by
defendants, Sgt. Davenport, CO Gaudious, Tamagni, CO S. Gonzales,
CO Newman, Lt. Phrampus, Sgt. Maldonado, Sgt. Augustin, Sgt. M.E.
Chard, Captain Raffine, CO Gibson, and Ass't. Superintendent
Jallo, in retaliation for filing grievances and complaints.
Specifically, defendants threatened Wagenhoffer with physical
violence, filed false disciplinary charges against him, denied
him the opportunity to practice his religion and denied plaintiff
any reading materials.[4]  Wagenhoffer also alleges that CO Gibson

---

        [4]  These allegations that plaintiff was denied the
opportunity to practice his religion and to have reading
materials may themselves be First Amendment violations.  However,

14

spat and put unknown substances in plaintiff's food in retaliation for filing a grievance.  These allegations may tend to support a claim of retaliation in violation of plaintiff's First Amendment rights.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229

---

Wagenhoffer does not assert these violations as separate claims and he does not allege any facts to support such claims or show that these violations are ongoing.  Nevertheless, because this Complaint should be construed liberally for a pro se litigant, this Court will allow Wagenhoffer to amend his Complaint, pursuant to Fed.R.Civ.P. 15, to allege the necessary facts to support these separate claims.  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125
F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.
Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v.
Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

Based on the allegations set forth in the Complaint, if
true, Wagenhoffer may be able to support a claim of retaliation.
Accordingly, this claim will be allowed to proceed at this early
stage.

C.   Interference with Legal Mail

Inmates have a limited liberty interest in their mail under
the First and Fourteenth Amendments; thus, an inmate's
constitutional right to send and receive mail may be restricted
only for legitimate penological interests.  See Thornburgh v.
Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78,
89 (1987).  A single interference with the delivery of an
inmate's personal mail, without more, does not rise to the level
of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d
1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

The assertion that legal mail is intentionally opened and
read, delayed for an inordinate period of time, or stolen states
a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81
F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail
Room Dep't, 990 F.2d 304 (7th Cir. 1993).  The Court of Appeals
for the Third Circuit has held that "a pattern and practice of

16

opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Recently, the Third Circuit held that the legal mail policy of state prison in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff.  Jones v. Brown, 461 F.3d 353 (3d Cir. 2006).

Here, Wagenhoffer alleges that MSCF defendants, Sgt. Booth and John Doe mail room officer persistently opened plaintiff's incoming legal mail outside of his presence and sent same to the classification committee.  The supervisor of the classification committee then photocopied the legal mail and placed it in plaintiff's classification file.  It would appear from plaintiff's allegations that this interference with his legal mail was done simply because Wagenhoffer had filed grievances and complaints.  Thus, the allegations in the Complaint, if true, may be sufficient at this time to support an interference with the

17

mail claim, and this claim also will be allowed to proceed at this time.

D.   Disciplinary Due Process

Next, Wagenhoffer alleges that he was denied due process with respect to the August 2006 disciplinary proceedings against him.  In his Complaint, plaintiff states that defendant DHO Kathy Ireland conspired with the Deputy Attorney General Puglisi to submit an altered disciplinary record to the Superior Court of New Jersey with respect to plaintiff's appeal to state court from his administrative disciplinary proceedings.  Wagenhoffer complains that he lost 60 days good time credit.  He asks that this good time credit be restored until he receives a new disciplinary hearing.

In his motion for a preliminary injunction (Docket Entry No. 4), Wagenhoffer states that, on August 2, 2006, DHO Ireland failed to provide plaintiff with a legibly written statement of factual findings with respect to his institutional disciplinary proceedings.  (Motion at ¶ 7).  Plaintiff promptly filed a notice of appeal with the Superior Court of New Jersey, Appellate Division, citing numerous procedural due process violations.  On September 1, 2006, plaintiff informed NJDOC Commissioner Hayman and the then-acting New Jersey Attorney General that DHO Ireland had violated plaintiff's due process rights by failing to supply a legible written report of factual findings.  On October 20, 2006, plaintiff received a typed copy of the DHO decision, and

18

the time to appeal was extended accordingly.  On March 26, 2007,
the Appellate Division affirmed the DHO decision.  (Motion at ¶¶
8-12).  Wagenhoffer complains that the typed decision by DHO
Ireland was not part of the record and should not have been
relied upon by the state court on appeal.  (Motion at ¶¶ 12, 13).

Wagenhoffer further complains, in his motion for preliminary
injunction, that he was denied an opportunity to confront CO
Hunter, and that the issue of credibility was not properly
resolved by the DHO.  (Motion at ¶ 14).

To support this denial of procedural due process claim,
Wagenhoffer must demonstrate that the procedures afforded him
fell short of the requirements enunciated in Wolff v. McDonnell,
418 U.S. 539 (1974).[5]  Jackson v. Johnson, 15 F. Supp.2d 341, 351
(S.D.N.Y. 1998).  See Sandin, 515 U.S. at 487.

In Wolff v. McDonnell, the Supreme Court set forth the
requirements of due process in prison disciplinary hearings.  An
inmate is entitled to (1) written notice of the charges and no
less than 24 hours to marshal the facts and prepare a defense for
an appearance at the disciplinary hearing; (2) a written
statement by the fact finder as to the evidence relied on and the
reasons for the disciplinary action; and (3) an opportunity "to

_____

[5]  In Wolff, the Supreme Court held that, while prisoners
retain certain basic constitutional rights, including procedural
due process protections, prison disciplinary hearings are not
part of criminal prosecution, and an inmate's rights at such
hearings may be curtailed by the demands and realities of the
prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396,
1399 (3d Cir. 1991).

19

call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 563-71. However, inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings.  <u>Id</u>. at 567-68. <u>See also</u> <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 321-22 (1976); <u>Young v. Kann</u>, 926 F.2d 1396, 1404 (3d Cir. 1991); <u>Sanchez v. Roth</u>, 891 F. Supp. 452, 458-59 (N.D.Ill.1995); <u>Harrison v. Pyle</u>, 612 F. Supp. 850, 854-55 (D. Nev. 1985).

In this case, Wagenhoffer provides the Appellate Division Opinion which affirmed the disciplinary findings on state court appeal.  In its Opinion, dated March 26, 2007, the Appellate Division found that Wagenhoffer was afforded the due process rights contemplated under <u>Wolff</u>, and under state law.  For instance, the appellate court found that plaintiff received notice of the charges by copy of a disciplinary report and investigation on the same day.  Wagenhoffer had ample time to prepare a defense, and in fact, an adjournment was permitted for this purpose to allow plaintiff to obtain information and additional witness statements.  (Docket Entry 4-2 at pp. 5-6).

The court also found that plaintiff had opportunity to present documentary evidence, had sufficient access to witness statements, and had an opportunity to call and confront witness. (<u>Id</u>. at pp. 6-7).  The Appellate Division admitted that the

20

written decision by the DHO was illegible, but noted that a typed decision was provided and that the entire statement of factual findings had been read to plaintiff at the disciplinary proceeding.  Accordingly, the court determined that Wagenhoffer was afforded due process.  (Id. at 7-8).

Finally, the Appellate Division found that there was substantial evidence of plaintiff's disruptive conduct.  There were nine statements and reports that confirmed plaintiff's infractions.  The court rejected plaintiff's rebuttal as an uncorroborated contrary version of events.  (Id. at 8).

Based on the record provided by Wagenhoffer, he fails to demonstrate any claim of constitutional magnitude with respect to denial of procedural due process.  Indeed, it is clear that Wagenhoffer was afforded all of the procedural due process rights established under Wolff.  The claim that he was not provided a legible decision of factual findings is illusory.  The DHO had provided a typed decision at plaintiff's urging, and further, the complete statement of findings had been read to plaintiff at the disciplinary hearing.  Therefore, Wagenhoffer had notice of the decision sufficient for purposes of appeal.

In addition, the argument that this typed report was a false record lacks merit.  A written decision was read at the conclusion of the disciplinary hearing, thus providing full notice to plaintiff for purposes of appeal.  That written decision also was given to plaintiff, but the handwriting was not

21

legible.  The DHO merely typed the handwritten report for
plaintiff's convenience and need for appeal.  Plaintiff was given
time to file his appeal after receipt of the typed report.  Thus,
there was no deprivation of notice, appeal or other due process
rights under Wolff.  Any claim of denied disciplinary due process
will be dismissed for failure to state a cognizable claim of a
federal constitutional deprivation.[6]

---

[6]  The Supreme Court has held that procedural due process is
not satisfied "unless the findings of the prison disciplinary
board are supported by some evidence in the record."
Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v.
Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court
has stated:

> Prison disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must
> often act swiftly on the basis of evidence that might
> be insufficient in less exigent circumstances.  The
> fundamental fairness guaranteed by the Due Process
> Clause does not require courts to set aside decisions
> of prison administrators that have some basis in fact.
> Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any other
> standard greater than some evidence applies in this
> context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover,
the Court stated:  "The Federal Constitution does not require
evidence that logically precludes any conclusion but the one
reached by the disciplinary board.  Instead, due process in this
context requires only that there be some evidence to support the
findings made in the disciplinary hearing."  Id. at 457.

This Court notes that the Appellate Division found
sufficient evidence from the record to support the disciplinary
finding.  There were nine statements and reports to support the
charges against plaintiff.  Plaintiff offered only an
uncorroborated version of events.  Thus, it would appear that
there was sufficient evidence in the record to support the
disciplinary finding and negate any due process violation claim.

Finally, Wagenhoffer seeks to have his good time credits
restored.  It would appear that plaintiff is attempting to
reverse the August 2006 disciplinary finding and restore good
conduct time accordingly.  Such a claim is barred by <u>Preiser v.
Rodriquez</u>, 411 U.S. 475 (1973), because the relief sought
presumes plaintiff's immediate or speedier release from prison
and therefore, is not cognizable under § 1983, but instead,
should be raised in a habeas proceeding.

Thus, plaintiff's claim alleging denial of disciplinary due
process will be dismissed for failure to state a claim upon which
relief may be granted; and the motion for preliminary injunction
is denied accordingly.

E.  <u>Classification Status</u>

Wagenhoffer also claims that his custody status
classification from gang minimum to medium security violates
state law and due process.  It is well established that an inmate
does not possess a liberty interest arising from the Due Process
Clause in assignment to a particular custody level or security
classification or a place of confinement.  <u>See Wilkinson v.
Austin</u>, 545 U.S. 209, 125 S.Ct. 2384, 2393 (2005); <u>Olim v.
Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S.
215, 224-25 (1976); <u>Montayne</u>, 427 U.S. at 243; <u>Moody v. Daggett</u>,
429 U.S. 78, 88 n.9 (1976).  Moreover, the custody placement or
classification of state prisoners within the State prison system
is among the "wide spectrum of discretionary actions that

23

traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. at 225. Therefore, this Court finds that Wagenhoffer fails to state a claim of constitutional dimension with respect to his custody level classification, and this claim will be dismissed accordingly.[7]

F. Supervisor Liability

    Finally, Wagenhoffer asserts claims against supervisory prison officials, namely, BSP Administrator Sullivan, Ass't. Superintendent Andrea Kinchen, SSCF Administrator Robinson, Ass't. Superintendent Bartkowski, SWSP Administrator MacFarland, Ass't. Superintendent Jallo, Adm. Assistant Balicki, MSCF Ass't. Superintendent Hughes, and NJDOC Commissioner Hayman. Generally, supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

_____

    [7] Violation of state law as alleged by Wagenhoffer is not cognizable in a § 1983 claim. Additionally, because there is no related due process claim proceeding with respect to plaintiff's classification claim, this Court declines to exercise pendent or supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). Finally, to the extent that plaintiff's motion for preliminary injunction is based on an "illegal" classification claim, the motion is denied because plaintiff has failed to state a claim for relief in this regard.

the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here, however, Wagenhoffer alleges that these supervisory officials were personally involved in the alleged constitutional violations through actual knowledge and acquiescence.  Namely, plaintiff alleges that these defendants were aware of the retaliatory wrongs and the denial of access to a law library or person trained in the law, yet did nothing to prevent or remedy these alleged constitutional violations.  Therefore, this Court will allow the Complaint to proceed at this time against the named supervisory defendants to the extent that these defendants were personally involved in the constitutional wrongs asserted in those claims also proceeding.

V.  CONCLUSION

For the reasons set forth above, plaintiff's claims asserting denial of access to the courts (law library and person trained in the law), retaliation, and interference with the mail

will be allowed to proceed at this time.  However, plaintiff's claims alleging denial of disciplinary due process and unlawful classification/custody level status, as asserted against defendants Ireland, Puglisi, Kinchen and the SSCF Chairman of Classification, will be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Finally, plaintiff's motion for a preliminary injunction is denied because the motion is based on his claims of procedural due process violations with respect to his disciplinary proceedings and classification level status that are being dismissed for failure to state a claim.  The application for appointment of counsel will be dismissed without prejudice to plaintiff's renewal of this request.  An appropriate order follows.

S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: November 20, 2007